IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| UNITED GOVERNMENT SECURITY ) <br> OFFICERS OF AMERICA, ) <br> INTERNATIONAL UNION and ) <br> UNITED GOVERNMENT SECURITY ) <br> OFFICERS OF AMERICA, ) <br> LOCAL 401, ) <br>             ) <br>     Plaintiffs, ) <br>             ) <br>     v.      ) <br>             ) <br> CDA INCORPORATED aka ) <br> CDA Sky-Trac, ) <br>             ) <br>     Defendant. ) | CIVIL ACTION NO. <br> 2:10cv17-MHT <br> (WO) |

OPINION

Plaintiffs United Government Security Officers of America, International Union and United Government Security Officers of America, Local 401 (together, "the union") filed this action against defendant CDA Incorporated ("CDA") seeking modification of an arbitration award under the Labor-Management Relations Act ("LMRA"), 29 U.S.C. § 185, and the Federal Arbitration Act ("FAA"), 9 U.S.C. § 11(a).  This case is

currently before the court for final disposition of the union's complaint.  For the reasons that follow, the court will vacate that portion of the arbitration award requiring the union to pay half of the back pay awarded to its member, Lori Daniels.

I.

CDA provides security services to businesses and government agencies.  During the period of time relevant to this case, it supplied security guards to the United States Army base at Fort Rucker, Alabama.  Lori Daniels was one of those guards.  On October 23, 2008, a visitor to the base reported seeing Daniels smoking a cigarette while on duty.  As a result of that complaint, Daniels was summoned to her supervisor's office and fired.

The union, believing that Daniels may have been falsely accused and that the allegations, even if true, did not warrant termination, filed a notice of arbitration on Daniels's behalf.  The union went on to

serve as Daniels's representative in arbitration. After considering the evidence presented, the arbitrator determined that CDA should not have terminated Daniels and awarded her back pay. However, because the arbitrator also found Daniels "somewhat culpable," he cut her back-pay award in half, from $ 26,054.40 to $ 13,027.20. The parties do not contest that result.

The arbitrator went on to calculate his own fee and costs, which the collective-bargaining agreement required the parties to split. The parties do not challenge either the amount owed to the arbitrator or their obligation to pay.

Only the final sentence of the arbitration award is in dispute. The relevant portion of the award reads: "For the aforesaid reasons, I awarded the grievant $ 13,027.20 in back pay .... In addition, expenses are $ 1,499.16. Therefore, each party is requested to pay one half of the total of $ 14,526.36, which is $ 7,263.18." The central issue before this court is

3

whether that portion of the award requiring the union to split the back-pay award with DCA should be vacated or modified.[1]

II.

As an initial matter, CDA argues that the union's claim is untimely.  It submits that this court should apply Alabama's 30-day limitations period for parties to appeal arbitration awards, see Ala. R. Civ. P. 71B, and find that the union's complaint, filed a little less than three months after the arbitrator's October 8, 2009, decision, is time barred.  This argument is without merit.

---

    1.  Because CDA does not argue that the collective-bargaining agreement precludes any judicial review of the arbitral award, that potential argument is deemed waived. See Johnson v. Andalusia Police Dep't, 633 F. Supp. 2d 1289, 1299 (M.D. Ala. 2009) (Thompson, J.) (deeming claim not mentioned in party's brief to be waived); cf. Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("[T]he law is by now well settled in this Circuit that a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

As far back as 1987, the Eleventh Circuit Court of Appeals made clear that "the time period during which an arbitration award is vulnerable to attack is a[] ... crucial matter of federal labor policy" and that "federal labor policy ... requires a uniform federal limitations for suits to vacate arbitration awards under collective bargaining agreements."  Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 823 F.2d 466, 475 (11th Cir. 1987).  While this alone would be enough to justify borrowing a limitations period from federal (rather than state) law, the Eleventh Circuit recently addressed nearly the precise question at issue in this case and concluded that the FAA's three-month limitations period "applies to a motion to vacate an arbitration award arising out of collective bargaining agreements." United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, Local 329 v. Wise Alloys, LLC, 642 F.3d 1344, 1354 (11th Cir. 2011).  As a result, the FAA's three-month limitations period, rather

than Alabama's 30-day limitations period, applies to the union's challenge to the arbitration award.

CDA concedes that, "Under the FAA limits, [the union's] filing is timely," Def.'s Br. 8 (Doc. No. 22); moreover, an independent review of the record shows that the complaint in this case was filed within the FAA's three-month limitations period. The union's claim is therefore timely.

### III.

The merits of the union's timely claim are somewhat more complicated. "Judicial review of a labor-arbitration decision pursuant to [a collective-bargaining] agreement is very limited."[2]  Major League

---

2. Neither the Eleventh Circuit nor the Supreme Court has determined whether the FAA applies to actions for the enforcement, modification, or vacation of an arbitral award made pursuant to a collective-bargaining agreement.  See Aldred v. Avis Rent-A-Car, 247 F. App'x 167, 170 (11th Cir. 2007) (per curiam); Brisentine v. Stone & Webster Eng'g Corp., 117 F.3d 519, 525 (11th Cir. 1997).  Because both the FAA and the LMRA compel the same
(continued...)

6

Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001).  Courts must refrain from "weighing the merits of the grievance[:] ... It is only when the arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] his own brand of industrial justice' that his decision may be unenforceable."  Id. (quoting United Steelworkers of Am. v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  The inquiry must therefore focus on "whether an award is irrational, whether it fails to draw its essence from the collective bargaining agreement or whether it exceeds the scope of the arbitrator's authority."  Osram Sylvania, Inc. v. Teamsters Local Union 528, 87 F.3d 1261, 1263 (11th Cir. 1996).

Even in the "'very rare'" occasions where error requires that the arbitrator's award be overturned, "'the court must not foreclose further proceedings by settling

---

(...continued)
result and because this court has subject-matter jurisdiction under either statute, there is no need to attempt to resolve that issue here.

the merits according to its own judgment of the appropriate result.'" Garvey, 532 U.S. at 510 (quoting United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n.10 (1987)).  Doing so "would improperly substitute a judicial determination for the arbitrator's decision that the parties bargained for."  Misco, 484 U.S. at 40 n.10.  That said, when an error warrants setting aside an award, a court may "vacate the award, thus leaving open the possibility of further proceedings if they are permitted under the terms of the agreement." Id. (internal quotation marks omitted).

IV.

The parties do not challenge the arbitrator's factual findings or his application of those facts to the governing law.  It is only the award's final sentence, requiring the union and CDA to split Daniels's back-pay award, that is in dispute.

8

That the arbitrator would conclude that CDA wronged Daniels and award her back pay, but require her representative in the arbitration to bear half the cost of that award is certainly anomalous: no party has been able to identify any other arbitration award reaching a similar result.  While anomalous does not always mean erroneous, the final sentence of this arbitral award so conflicts with both the collective-bargaining agreement and the facts put before the arbitrator that it must be vacated.

First of all, nothing in the collective-bargaining agreement makes the union liable for damages caused by the employer.  This is important because, when the agreement did intend to make the union liable, it did so expressly.  For example, the "Arbitration Expense" provision of the agreement specifically requires that the "arbitrator's fees and expenses, including cost of any hearing room, shall be shared equally between the Employer and the Union." Arbitration Record 82 (Doc. No.

9

20).  There are no similar provisions authorizing the arbitrator to hold the union liable for damages caused by the employer.  Indeed, the collective-bargaining agreement's provision governing arbitration proceedings provides for the splitting of only the arbitrator's fees and expenses.  It also precludes the arbitrator from adding to or modifying the terms of that provision.  It therefore appears that the arbitrator lacked the authority under the collective-bargaining agreement to order the union to pay half of Daniels's back-pay award.

This is consistent with the union's role as the employee's representative in the arbitration.  It would make no more sense to hold that the union, in that role, is obligated to pay an award in favor of its client than it would to hold that CDA's lawyers are obligated to pay an award issued in favor of their client.  Clients pay their representatives, not the other way around, particularly when the representative favorably resolves the dispute (as the union did here).  It would simply

make no sense to penalize an employee's representative for successfully bringing an arbitration proceeding on the employee's behalf. But that is precisely what the arbitrator appears to have done in this case.

Second, nothing in the arbitration award's factual-findings or discussion section mentions the possibility of, let alone justifies, holding the union responsible for any portion of the back-pay award. Despite carefully examining and explaining the factors leading to his decision, the arbitrator omitted any indication that the union had committed a wrong that might justify having it pay half of Daniels's damages or that there was some law or provision in the collective-bargaining agreement that would justify such?. Indeed, it was Daniels who the arbitrator found "somewhat culpable," not her representative, and the arbitrator reduced her award based on that finding alone. Arbitration Record 6 (Doc. No. 20).

It is unsurprising that, in discussing the facts of the case and the evidence before him, the arbitrator did not even mention the possibility of wrongdoing by the union.  The union was not accused of any misconduct; it had nothing to do with the events underlying Daniels's termination; and the record contains absolutely no justification for holding it liable for any portion of its member's back pay.  To assign the employer blame and then impose upon the union an obligation to pay half of the ultimate award makes no more sense than granting judgment for the plaintiff in a tort suit and then ordering plaintiff's counsel--as opposed to the defendant--to compensate his client for her damages.  That latter result would be unheard of, and there is no rational basis in the record to justify it in this case.

In sum, the final sentence of the arbitrator's award is wholly inconsistent with the collective-bargaining agreement, the allegations Daniels brought against CDA, and the arbitrator's factual findings in this case.

Nevertheless, a careful review of the record provides some insight into the likely cause of this irrational award: the award's final sentence does not reflect the arbitrator's intention, but was instead the result of a mistake made when the arbitrator's notes were converted into the final award.[3]

The arbitrator issued the award in this case at the very tail end of his career and only few months before his death.  By then, his health had seriously deteriorated and he was forced to delegate the task of

---

3.  The draft opinion from which the final award was transcribed is not part of the record.  Instead, the parties have provided approximately 16 pages of the arbitrator's notes.  Nothing in those notes reveals a justification for holding the union responsible for a portion of the back-pay award.  At one point, however, there is a stray hand-written calculation, among many stray hand-written calculations, in which the arbitrator divided the award amount in half.  Nevertheless, this fleeting and unreliable notation does not reveal what was contained in the arbitrator's actual draft opinion. Since the union had nothing to do with Daniels's termination and it was that termination that required the back-pay award, there is no reason to think that the arbitrator ultimately concluded that the union should be held liable for the salary she would have received had she not been fired.

typing out the final award to his niece.  There is no doubt that the arbitrator intended to hold the union liable for only one half of his fee and expenses, as provided by the collective-bargaining agreement.  The sentence ordering the parties to split the back-pay award as well was one of several clerical errors resulting from the transcription of the arbitrator's final award.[4]  Neither the record nor the law provides any other explanation, and common sense reveals the truth behind that conclusion.[5]

---

4.  Other errors include (1) an overstatement of the amount of back pay sought by the union, (2) a significant understatement of the arbitrator's actual expenses, and (3) the arbitrator's direction to the parties that they should pay both his arbitration expenses <u>and the award amount itself</u> directly to him.  While neither party suggests that this court should correct those mistakes, their existence is wholly consistent with the union's assertion that the individual who typed out the award lacked the attention to detail necessary for such a task.

5.  The record includes an uncontradicted affidavit from a longtime colleague and friend of the arbitrator stating, in part:

(continued...)

---

(...continued)
"I have reviewed [the arbitrator's] file. ... By the time [the arbitrator] had finalized the last portion of his Award in October 2009, his health had seriously deteriorated. After further hospitalization, he passed away the following month. Looking back, it had taken a heroic effort for him to travel to Montgomery and conduct the Hearing. ... A review of the Award shows [that the arbitrator] had written the October 2009 Opinion in a clear and logical manner. His findings had been made in accordance with accepted Arbitration standards and are supported by the evidence he reviewed. ... <u>The only apparent errors dealt with billing, involved computation of his fees and expenses and a mistake in allocating payment of the back pay between the Company and the Union</u>. ... Under the Labor Agreement and the circumstances here, the Union did not have any back pay obligation; that responsibility was solely that of the Company. Unfortunately, [the arbitrator's] billing instructions were confused and, in his condition, he had not caught that error. At that time in his life, he had closed his office and it was a young relative who typed what would become his final Award. ... Obviously there would be no basis for the Union, as the prevailing party, to pay any part of the Back Pay Award."

(continued...)

15

For its part, CDA argues that the arbitrator made the union liable for a portion of Daniels's back pay because of the defense it put forth on Daniels's behalf. During the arbitration, Daniels testified that she had not been smoking. CDA asserts that a "reasonable supposition" is that the arbitrator, "in addition to decreasing ... Daniels['s] back pay, also found culpability in the union for its participation in her perjury." Def.'s Br. 4 (Doc. No. 22).

There is a reason that CDA fails to support that argument with evidence from the otherwise comprehensive reasoning laid out in the arbitration award: absolutely none exists. Given the arbitrator's painstaking efforts to identify the exhibits before him, explain the facts presented, and detail the various doctrines he employed in reaching his conclusion, the absence of any reference

---

(...continued)
Arbitration Record 26-27 (Doc. No. 20) (emphasis in original).

to wrongdoing on the union's part wholly undermines CDA's argument.

* * *

To be clear, the court finds no error in the arbitrator's findings of fact or application of those facts to the law. Unfortunately, the final sentence of the award failed to carry out the decision that the arbitrator had so carefully explained. No doubt this error would have been caught, and this irrational result avoided, but for the arbitrator's ill health and untimely death.

While this court cannot substitute its own view of the merits for those of the arbitrator, it can vacate that portion of an award which the arbitrator himself clearly did not intend, which the collective bargaining agreement does not authorize, for which there is absolutely no basis in the record, and which would otherwise render the award irrational. The court will therefore vacate that portion of the arbitrator's

17

decision requiring the union to pay half of the back-pay award.  The union is still obligated to pay one half of the arbitrator's expenses, or $ 749.58, directly to the arbitrator's estate.[6]  Daniels may seek the rest of the back pay to which she is entitled through the applicable grievance procedures, if available.

An appropriate judgment will be entered.

DONE, this the 1st day of November, 2011.

                                             /s/ Myron H. Thompson
                                       **UNITED STATES DISTRICT JUDGE**

---

6.    The actual award misstates the total expenses incurred by the arbitrator as $ 1,499.16, which does not include either the arbitrator's fee or the secretarial services that he provided.  His actual expenses were $ 3,704.76, or $ 1,852.38 per side.  The parties have not asked the court to correct that error, nor is it clear that the court even has the authority to do so.